Filed 3/29/24  P. v. Boston CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DONALD KIRKLAND BOSTON,<br><br>      Defendant and Appellant. | A164448<br><br>(Contra Costa County<br>Super. Ct. No. 05-910595-8) |

In 1992, Donald Boston was convicted of multiple offenses, including three first degree murders with special circumstances.  The present appeal is from an order denying Boston's 2020 petition to vacate his murder convictions and resentence him for his other offenses.  (Pen. Code, § 1172.6.)[1] Boston argues the superior court erred in concluding that he is ineligible for resentencing as a matter of law.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

### I.  Boston's 1992 Convictions

The events that gave rise to Boston's convictions are summarized in *People v. Amos et al.* (July 22, 1994, A058843) [nonpub. opn.] (*Amos*).

---

[1]  Statutory references are to the Penal Code, unless another statute is cited.  Boston filed his resentencing petition under former section 1170.95, which was amended and renumbered as section 1172.6 without substantive change.  (*People v. Vargas* (2022) 84 Cal.App.5th 943, 947, fn. 2; see Stats. 2022, ch. 58, § 10.)

Although we do not rely on the factual summary in *Amos* to conduct our review, we recount some background facts to provide context.

On December 6, 1989, Boston went to a mini mart in Vallejo with two associates, Fred Amos and Maurice Jackson, ostensibly to buy drugs. David Stump and David Conner were working at the mini mart that night. The drug seller was Johnny Castaneda, who arrived at the mini mart with Timothy Treas.

On December 10, 1989, Treas was found dead in the trunk of Castaneda's car. Later that day, police went to Castaneda's apartment where they found the bodies of Castaneda and his girlfriend, Claudia Blackmon. The following month, police responded to a report of a shooting incident at the mini mart, after which Stump and Conner were placed in a witness protection program.

### Criminal Charges

Pursuant to a January 1992 amended information, Boston and Amos were charged with multiple offenses relating to events at the mini mart.[2] Both defendants were charged with committing the following offenses on December 6 and 7, 1989: first degree murder of Castaneda, Treas and Blackmon (§ 187, counts 1–3); kidnapping for robbery of Castaneda and Treas (§ 290, subd. (b), counts 4–5); robbery of Castaneda and Blackmon (§§ 211 & 212.5, counts 6–7); burglary of the mini mart and of the apartment Castenada shared with Blackmon (§§ 459 & 460.2, count 8; §§ 459 & 460.1, count 9); vehicle theft (Veh. Code, § 10851, subd. (a), count 10); conspiracy to commit robbery, burglary, and kidnapping (former § 182.1, count 11); and unlawful possession of a concealable firearm by a felon (§ 12021, count 12 for Amos, count 13 for Boston).

---

[2] Jackson was charged and tried separately.

2

Boston was additionally charged with committing the following offenses on January 7, 1990: attempted murder of Stump and Conner (§§ 187 & 664, counts 14–15); and dissuading or preventing witnesses by force (§ 136.1, counts 16–17).

As to each murder charge and both defendants, the district attorney alleged four special circumstances: that the defendant committed more than one murder (§ 190.2, subd. (a)(3) [the multiple murder special circumstance]); and that the murder was committed during the commission or attempted commission of a robbery, a burglary, and a kidnapping, (§ 190.2, subd. (a)(17) [the felony-murder special circumstances]). As to the offenses charged in counts 1 through 11 and 16 and 17, it was further alleged that the defendant personally used a firearm (§ 12022.5, subd. (a)).

### *Jury Instructions Regarding Murder Convictions*

At trial, the jury was instructed regarding two theories of first degree murder: deliberate, premeditated killing with malice aforethought; and felony murder, with robbery and burglary designated as the predicate offenses.

The jury also received instruction regarding the liability of an aider and abettor, which provided that an aider and abettor is guilty not just of the "particular crime aided and abetted" (the target offense), but is also "liable for the natural and probable consequences of the commission of such crime." This instruction made clear that a defendant could not be found guilty as an aider and abettor of any crime unless the jury was "satisfied beyond a reasonable doubt that such crime was committed . . ."

The trial court used a modified version of CALJIC No. 8.80 to instruct the jury that if they found a defendant guilty of first degree murder in this case, they were required to go on to consider if the prosecution carried its

3

burden of proving any one of the four special circumstance allegations.  As pertinent here, the jury was instructed as follows:

"The People have the burden of proving the truth of a special circumstance.  If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true.

"If you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true.

"If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer, you cannot find any special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree.

"In other words, to find any of the four alleged special circumstances to be true, you must be satisfied beyond a reasonable doubt that the defendant actually killed a human being or had the specific intent to aid and abet another in killing even though some other person actually did the killing."[3]

### *Jury Verdicts*

In March 1992, the jury convicted Boston and Amos of all charges, with the exception of the count 5 charge of kidnapping for robbery, for which the defendants were convicted of the lesser offense of kidnapping.  All alleged special circumstances pertaining to the three first degree murders were found

---

[3] The last sentence of this excerpt from the special-circumstance instruction was a modification to the standard CALJIC instruction.

4

true, and all firearm use allegations were found true, except for the allegation pertaining to one of the burglary convictions.

Following separate penalty trials, the jury returned verdicts of life without parole as to both Boston and Amos. The trial court sentenced Boston to three consecutive life terms for the murders, each with consecutive four-year terms for the firearm use enhancement. Boston was sentenced to two additional consecutive life terms for the attempted murders, again with consecutive four-year terms for using a firearm. Sentences for Boston's other convictions were stayed. (§ 654.) In its 1994 decision in *Amos*, another panel of this court affirmed Boston's convictions and made modifications to his sentence for some of the firearm use enhancements.

## II. Senate Bill No. 1437

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which amended provisions of the Penal Code pertaining to the felony-murder rule (§ 189) and the natural and probable consequences doctrine (§ 188) in order " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Regarding the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e) (section 189(e)), which states: "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission

5

of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[4]

Senate Bill 1437 also "created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," by filing a petition for resentencing under section 1170.95, which was later renumbered as section 1172.6. (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*); see also *Lewis, supra,* 11 Cal.5th at p. 959.)

Pursuant to section 1172.6, a person previously convicted of murder or attempted murder may file a resentencing petition "when all of the following conditions apply": (1) the charging document filed against the petitioner permitted the prosecution to proceed under a theory of felony murder, or another theory of imputed malice; (2) the petitioner was convicted of murder, attempted murder or manslaughter following a trial or plea proceeding at which the petitioner could have been convicted of murder or attempted murder; and (3) the "petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

## III. Boston's Resentencing Petition

In August 2020, Boston filed a petition for resentencing under former section 1170.95. In May 2021, after counsel was appointed to represent him, Boston filed his operative amended petition. Boston alleges that murder charges relating to the mini mart incidents permitted the prosecution to

---

[4] As to the natural and probable consequences doctrine, section 188, subdivision(a)(3) now provides: "Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, and that he could not now be convicted of murder because of changes to section 188 and 189 that went into effect on January 1, 2019. Boston alleges further that he was not the actual killer; he did not, with intent to kill, aid, abet or assist the actual killer; and he either was not a major participant in the felony or he did not act with reckless indifference to human life during the course of the crime or felony.

On December 2, 2021, the trial court denied Boston's petition in a detailed written order. The court found that although Boston filed a facially valid petition, the record of conviction in this case conclusively shows that, as a matter of law, Boston is ineligible for relief. In reaching this conclusion, the court focused specifically on the third element of a prima facie case for relief, which requires the defendant to state facts to show that he could not currently be convicted of murder. (Citing former § 1170.95, subd. (a)(3).) Here, the court found, the jury verdicts establish that Boston was convicted of the murders of Castaneda, Treas and Blackmon under a theory of liability that remains valid under the current definitions of murder described in section 188 and 189. The court reasoned that the true findings as to the special-circumstance murder allegations conclusively establish that the jury found that Boston "either was the actual killer or that he engaged in the special circumstance felony or multiple murders with intent to kill." Accordingly, the petition for resentencing was summarily denied.

## DISCUSSION

The procedure for seeking resentencing relief "begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section

7

188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437.' " (*Strong*, *supra*, 13 Cal.5th at p. 708, quoting § 1172.6, subd. (a)(3).) Upon receipt of a facially valid petition, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*Ibid*.) At that stage, the "court may look at the record of conviction, which will necessarily inform its 'prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless.' " (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251 (*Williams*); see *Lewis*, *supra*, 11 Cal.5th at p. 971.)

"If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*Strong*, *supra*, 13 Cal.5th at p. 708, citing § 1172.6, subd. (c).) If, on the other hand, "the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*Strong*, at p. 708, quoting § 1172.6, subd. (c).) "We review de novo whether the trial court conducted a proper inquiry under section 1172.6." (*Williams*, *supra*, 86 Cal.App.5th at p. 1251.)

The dispositive issue presented by this appeal is whether the record of conviction in this case establishes that—as a matter of law—Boston is guilty of the murders of Castaneda, Treas and Blackmon under a still valid theory.

Under current law, "[a]ll murder that is . . . committed in the perpetration of . . . robbery [or] burglary . . . is murder of the first degree." (§ 189, subd. (a).) Senate Bill 1437 did not change this law. (See *People v. Lopez* (2023) 88 Cal.App.5th 566, 577 (*Lopez*); see *id*. at p. 581 (dis. opn. of Raphael, J.).) However, Senate Bill 1437 " 'narrowed the scope' " of the felony-murder rule by adding section 189(e). (*Lopez*, at p. 574.) Under the old felony murder law, before Senate Bill 1437 was enacted, "[t]he necessary

8

mental state was simply the intent to commit a qualifying felony" as "malice was *imputed* to the participant based on their willingness to commit a felony our Legislature deemed ' "inherently dangerous to human life." ' " (*Lopez*, at p. 574.)  Under the pertinent provision of the new law, section 189(e)(2), participation in a qualifying felony in which a death occurs is sufficient to justify liability for first degree murder if the defendant was "not the actual killer, but, with the intent to kill, aided, abetted . . . or assisted the actual killer in the commission of murder in the first degree."

The jury at Boston's murder trial was instructed that, in order to find the special-circumstance murder allegations true, it had to find that Boston was either the actual killer or that "with the intent to kill" he "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree."  This quoted language mirrors language in section 190.2, subdivision (c) (section 190.2(c)), which provides:  "Every person, not the actual killer, who, with the intent to kill, aids, abets, . . . or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4."

The jury found that, as to each murder victim, the four special circumstances alleged against Boston were true.  Thus, if Boston was not the actual killer, the jury found, he harbored the requisite intent to kill when he aided, abetted, or assisted "in the commission of the murder in the first degree."  These findings, considered together with the instructions regarding the murder charges and jury verdicts, establish that Boston was convicted under a still valid theory of felony murder, as he was either the actual killer or, at the very least, acted with the intent to kill when he assisted in the

9

commission of the first degree murders by aiding and abetting the robbery and burglary offenses during which the killings occurred.

Contending otherwise, Boston briefly argues that because the determination whether he acted with intent to kill was necessary only to decide the special-circumstance murder allegations, it cannot be used to establish the mens rea element of murder. This argument fails in light of *People v. Curiel* (2023) 15 Cal.5th 433, which holds that a finding of intent to kill made pursuant to a special-circumstance murder allegation is relevant and binding on the petitioner in a resentencing proceeding. (*Id.* at p. 453 [addressing gang-murder special circumstance].) Also, in contrast to *Curiel*, where the defendant was *not* prosecuted under a felony-murder theory (*id.* at p. 464), the record of conviction in this case shows that the jury made findings adequate to convict Boston of first degree felony murder under current law. Boston disagrees, which brings us to his primary claim of error.

Boston argues that the jury did not necessarily make findings to establish that his *conduct* would constitute murder under current law. According to this argument, language in section 189(e)(2) requiring that a defendant who was not the actual killer must have aided, abetted, or assisted the "actual killer in the commission of murder" means that the defendant must have aided, abetted, or assisted the killing itself, not just the target felony during which the murder occurred. Boston posits that no such finding was necessarily made against him, reasoning that because the special-circumstance findings establish only that he assisted "any actor," they do not necessarily show that he aided and abetted the killings themselves.

Boston's interpretation of section 189(e)(2) was rejected in *Lopez, supra,* 88 Cal.App.5th 566. The *Lopez* majority held that Senate Bill 1437 did not change the actus rea requirement for convicting an aider and abettor of first

10

degree felony murder; under the current and former law, it must be shown that the defendant aided and abetted the qualifying felony. (*Lopez*, at pp. 577–578.) Relying on the dissenting opinion in *Lopez*, which in turn relied on *People v. Ervin* (2021) 72 Cal.App.5th 90, Boston insists that section 189(e)(2) did change the law by expressly requiring that a defendant must have aided and abetted the "actual killer," and that this allegedly new requirement limits aider and abettor liability for felony murder to cases in which the defendant aided and abetted the homicidal act itself. We disagree with Boston, as we find the analysis of the *Lopez* majority more persuasive.

As explained in *Lopez*, the purpose of Senate Bill 1437 "was to stop the practice of imputing malice to defendants to justify convicting them of murder. A defendant who participates in a qualifying felony while harboring express malice does not fall into the class of offenders the new law was enacted to protect. [Citation.] In other words, because express malice is an element of [section 189(e)(2)] felony-murder liability, there is no reason to interpret the actus reus requirement as anything different than what the felony-murder actus reus requirement was before Senate Bill 1437—'aiding and abetting the underlying felony or attempted felony that results in the murder.' " (*Lopez*, supra, 88 Cal.App.5th at p. 578, italics omitted, quoting *People v. Clark* (2016) 63 Cal.4th 522, 615.) Thus, under felony-murder law, both currently and historically, "assisting a qualifying felony in which a death occurs is the same as assisting the actual killer in committing first degree murder, and vice versa." (*Lopez*, at p. 578.) There is no new

11

requirement that the defendant must have also assisted in the killing act itself.[5]

The *Lopez* majority's construction of section 189(e)(2) is consistent with and reinforced by authority construing substantially similar language in section 190.2(c), the special-circumstance murder statute addressing aiders and abettors. As noted, section 190.2(c) provides for enhanced penalties when a special circumstance has been found true as to a defendant convicted of first degree murder who, though not the actual killer, "with the intent to kill aids, abets, . . . or assists any actor in the commission of murder." Our Supreme Court has construed this language to mean that the defendant must have aided or abetted the predicate felony but need not have assisted in the killing itself. (*People v. Dickey* (2005) 35 Cal.4th 884, 900 [construing section 190.2, former subd. (b), now subd. (c)].) The fact that the Legislature elected to use language that is substantively similar to section 190.2(c) when it enacted section 189(e)(2) reinforces that the Legislature intended both provisions to have the same meaning, i.e., that a defendant who aids, abets, or assists in the commission of the predicate felony thereby also aids, abets, or assists in " 'the commission of murder.' " (*Lopez*, *supra*, 88 Cal.App.5th at pp. 577–578, italics omitted.)[6]

---

[5] In light of our conclusions, we do not address Boston's argument that the modification made to the CALJIC jury instruction in this case was insufficient to require the jury to determine whether Boston aided and abetted the act of murder.

[6] Boston mistakenly relies on *People v. Fayed* (2020) 9 Cal.5th 147, an appeal by a defendant convicted of murdering his wife, with the special circumstance that the murder was committed for financial gain. (§ 190.2, subds. (a)(1).) Affirming the judgment, the Court in *Fayed* observed that when the financial gain special circumstance and the aiding and abetting

12

Moreover, construing section 189(e)(2) as changing the actus rea for felony murder would defy common sense because it would make it "easier for the prosecution to obtain a conviction for defendants who harbored the less culpable mindset of reckless indifference to human life than for those who acted with express malice." (*Lopez, supra*, 88 Cal.App.5th at p. 579, italics omitted.) Under the reckless disregard to human life provision of section 189(e), the defendant need only have been a major participant in the felony to be guilty of murder, and yet under Boston's reading of the statute, a defendant who acts with actual malice would not be guilty of murder unless the prosecution proved that the defendant not only aided and abetted the qualifying felony but also aided the "murderous act as well." (*Lopez*, at p. 579, italics omitted.) Such a construction is inconsistent with the legislative purpose underlying Senate Bill 1437, which was to "stop the practice of imputing malice," not to "make felony-murder liability more difficult to prove than direct aiding and abetting in cases where the defendant acted with express malice." (*Lopez*, at p. 579, italics omitted.)

Boston contends that even if aiding and abetting a predicate felony during which a killing occurs constitutes aiding and abetting commission of

_____

provision of the special circumstances statute are construed together, " 'it is clear that one who intentionally aids and encourages a person in the deliberate killing of another for the killer's own financial gain is subject to the special circumstance punishment.' " (*Fayed*, at p. 202.) But contrary to Boston's argument to this court, *Fayed* does not assist Boston. Indeed, the case rejects an argument parallel to the one Boston makes here. *Fayed* explains that the financial gain special circumstance is true even when the participant who acts for financial gain is not the actual killer but a third person, such as an intermediary between the hirer and the killer. (*Ibid*.) *Fayed* does not hold or intimate that a person convicted as an aider and abettor of felony murder must have aided in the killing itself, or have aided the person who does the actual killing as opposed to any other participant in the crime.

murder, the record of conviction in his case does not conclusively show that the jury made findings sufficient to convict Boston of murder under current law due to the fact that three people were accused of committing the robberies and felonies during which the victims were killed. According to this argument, the distinction between "any actor" and "actual killer" may be immaterial when the evidence shows that only two people perpetrated the felonies, in which case it can be assumed that the defendant who aided the commission of the felony thereby assisted the actual killer. Here, however, the jury was told that three people participated in the predicate felonies, which, Boston argues, leaves open the possibility that he was found to have aided and abetted somebody who was not the actual killer, i.e., "a non-killing accomplice or conspirator." Despite its surface logic, this argument is ultimately unavailing because it rests on the same premise as Boston's first argument, i.e., that section 189(e)(2) changed the law to require the defendant to have aided in the act of killing itself.

As explained above, "assisting a qualifying felony in which a death occurs is the same as assisting the actual killer in committing first degree murder, and vice versa." (*Lopez*, *supra*, 88 Cal.App.5th at p. 578.) This principle does not depend on the number of people who commit the qualifying felony, as all participants in the crime necessarily aid the others, the actual killer included. Thus, if the defendant's conduct constitutes aiding and abetting of a target felony, and a death occurs during commission of the felony, that defendant has necessarily assisted the actual killer in committing first degree murder, whether or not the defendant assisted in the specific act of killing itself.

Section 189(e)(2) changed the law of felony murder by imposing liability on a defendant who is not the actual killer but who, with the intent to kill,

14

aids, abets, or assists in the commission of a predicate felony during which the death occurs.  Such conduct necessarily aids the actual killer in commission of the murder.  Because Boston's record of conviction shows that the jury made findings sufficient to convict him of first degree felony murder under this law, we reject his contention that the trial court erred by denying his petition.

## DISPOSITION

The order denying Boston's petition for resentencing is affirmed.


TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.


*People v. Boston* (A164448)